**Docket No. 14-55329**

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

LEAH MANZARI, p/k/a Danni Ashe,

*Plaintiff-Appellee,*

v.

ASSOCIATED NEWSPAPERS LTD.,

*Defendant-Appellant.*

*Appeal from a Decision of the United States District Court for the Central District of California,
No. 13-cv-06830-GW-PJW · Honorable George H. Wu*

## REPLY BRIEF OF APPELLANT

LOUIS P. PETRICH
LEOPOLD, PETRICH & SMITH PC
2049 Century Park East
Suite 3110
Los Angeles, California 90067
(310) 277-3333 Telephone
(310) 277-7444 Facsimile

KATHERINE M. BOLGER
LEVINE SULLIVAN KOCH & SCHULZ, LLP
321 West 44th Street
Suite 1000
New York, New York 10036
(212) 850-6100 Telephone
(212) 850-6299 Facsimile

*Attorneys for Appellant Associated Newspapers Ltd.*

 

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT ................................................................... 1

ARGUMENT .................................................................................................. 4

    I.    PLAINTIFF CONCEDES THAT CALIFORNIA'S
         ANTI-SLAPP STATUTE APPLIES, BUT MISSTATES
         HER BURDEN ........................................................................... 4

    II.   PLAINTIFF FAILED TO SHOW A PROBABILITY
         OF PREVAILING ON HER DEFAMATION CLAIM ...................... 6

         A.    The Alleged Defamatory Statement Is Not "Of and
              Concerning" Plaintiff .................................................... 7

         B.    Plaintiff Is a Public Figure Who Cannot Show
              That Defendant Intended the Alleged Implication ................... 13

              1.    Plaintiff is a public figure ............................... 14

              2.    The *Newton/Dodds* test applies to Ashe's claim ........... 19

              3.    Plaintiff established no likelihood of demonstrating
                  by clear and convincing evidence that ANL intended
                  to convey the false implication alleged ......................... 22

    III.  PLAINTIFF UTTERLY FAILS TO REBUT DEFENDANT'S
         ARGUMENT REGARDING HER FALSE LIGHT CLAIM ........... 26

CONCLUSION ........................................................................................... 27

CERTIFICATE OF COMPLIANCE .......................................................... 28

CERTIFICATE OF SERVICE .................................................................. 29

# TABLE OF AUTHORITIES

## CASES

*Annette F. v. Sharon S.*,
  119 Cal. App. 4th 1146 (2004) ...................................................21

*Baker v. L.A. Herald Exam'r*,
  42 Cal. 3d 254 (1986) ........................................................10, 12

*Balzaga v. Fox News Network, LLC*,
  173 Cal. App. 4th 1325 (2009) ..........................................12, 13

*Blatty v. N.Y. Times Co.*,
  42 Cal. 3d 1033 (1986) ...........................................................7

*Bose Corp. v. Consumers Union U.S., Inc.*,
  466 U.S. 485 (1984) ...............................................................22

*Carafano v. Metrosplash.com Inc.*,
  207 F. Supp. 2d 1055 (C.D. Cal. 2002) .....................14, 15, 17, 18

*Christian Research Inst. v. Alnor*,
  148 Cal. App. 4th 71 (2007) ....................................................21

*City of Cotati v. Cashman*,
  29 Cal. 4th 69 (2002) ..............................................................27

*Clark v. ABC*,
  684 F.2d 1208 (6th Cir. 1982) ...................................................9

*Consumer Justice Ctr. v. Trimedica Int'l, Inc.*,
  107 Cal. App. 4th 595 (2003) .....................................................5

*Crump v. Beckley Newspapers, Inc.*,
  320 S.E.2d 70 (W. Va. 1983) .....................................................9

*Curtis Publ'g Co. v. Butts*,
  388 U.S. 130 (1967) ................................................................14

*Davis v. High Soc'y Magazine, Inc.*,
  457 N.Y.S.2d 308 (App. Div. 1982) ............................................9

*Dodds v. ABC*,
  145 F.3d 1053 (9th Cir. 1998) ...........................................*passim*

*Dong v. Bd. of Trs.*,
    191 Cal. App. 3d 1572 (1987) ........................................................9

*Douglass v. Hustler Magazine, Inc.*,
    769 F.2d 1128 (7th Cir. 1985) ....................................................18

*Duncan v. WJLA-TV*,
    10 Media L. Rep. (BNA) 1395 (D.D.C. 1984).............................9

*Dworkin v. Hustler Magazine Inc.*,
    867 F.2d 1188 (9th Cir. 1989) ..............................................19, 26

*Eastwood v. National Enquirer, Inc.*,
    123 F.3d 1249 (9th Cir. 1997) .............................................*passim*

*Erie R.R. Co. v. Tompkins*,
    304 U.S. 64 (1938)......................................................................23

*Flores v. Emerich & Fike*,
    385 F. App'x 728 (9th Cir. 2010) ................................................6

*Four Navy Seals v. AP*,
    413 F. Supp. 2d 1136 (S.D. Cal. 2005) ........................................6

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)....................................................................14

*HMS Capital, Inc. v. Lawyers Title Co.*,
    118 Cal. App. 4th 204 (2004) ......................................................5

*Jarrow Formulas, Inc. v. LaMarche*,
    31 Cal. 4th 728 (2003) ................................................................5

*Kaelin v. Globe Communications Corp.*,
    162 F.3d 1036 (9th Cir. 1998) ..............................................11, 12

*Las Vegas Sun, Inc. v. Franklin*,
    329 P.2d 867 (Nev. 1958)...........................................................10

*Leidholdt v. L.F.P. Inc.*,
    860 F.2d 890 (9th Cir. 1988) .....................................................14

*Lerman v. Flynt Distributing Co., Inc.*,
    745 F.2d 123 (2d Cir. 1984) ......................................................18

*M.G. v. Time Warner, Inc.*,
    89 Cal. App. 4th 623 (2001) ......................................................26

*Maheu v. CBS, Inc.*,
    201 Cal. App. 3d 662 (1988) ................................................................18, 19

*Makaeff v. Trump Univ., LLC*,
    No. 10CV0940 GPC WVG, --- F. Supp. 2d ----,
    2014 WL 2743244 (S.D. Cal. June 17, 2014) ............................................21

*McNair v. Hearst Corp.*,
    494 F.2d 1309 (9th Cir. 1974) ......................................................................12

*Metabolife Int'l Inc. v. Wornick* (*Metabolife*),
    264 F.3d 832 (9th Cir. 2001) ...............................................................*passim*

*Monterey Plaza Hotel v. Hotel Emps. & Rest. Emps.*,
    69 Cal. App. 4th 1057 (1999) ......................................................................12

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964)................................................................................7, 24

*Navellier v. Sletten*,
    106 Cal. App. 4th 763 (2003) .........................................................................5

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ........................................................................14

*Newton v. NBC*,
    930 F.2d 662 (9th Cir. 1990) ...............................................................*passim*

*Palmisano v. Modernismo Publ'ns, Ltd.*,
    470 N.Y.S.2d 196 (App. Div. 1983)................................................................9

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ........................................................................19

*Peck v. Tribune Co.*,
    214 U.S. 185 (1909)................................................................................8, 9

*Peoples Bank & Trust Co. of Mountain Home v. Globe Int'l Publ'g, Inc.*,
    978 F.2d 1065 (8th Cir. 1992) ........................................................................9

*Pfingston v. Ronan Eng'g Co.*,
    284 F.3d 999 (9th Cir. 2002) ........................................................................23

*Prince v. Out Publ'g, Inc.*,
    2002 WL 7999 (Cal. Ct. App. Jan. 3, 2002)........................................9, 12, 13

*Reader's Digest Ass'n v. Super. Ct.*,
    37 Cal. 3d 244 (1984) ................................................................17

*Schermerhorn v. Rosenberg*,
    426 N.Y.S.2d 274 (App. Div. 1980).............................................10

*Soukup v. Law Offices of Herbert Hafif*,
    39 Cal. 4th 260 (2006) ................................................................5

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)...................................................................25

*Thomas v. L.A. Times Commc'ns, LLC*,
    189 F. Supp. 2d 1005 (C.D. Cal. 2002), *aff'd*,
    45 F. App'x 801 (9th Cir. 2002) ................................................21

*Triangle Publ'ns v. Chumley*,
    317 S.E.2d 534 (Ga. 1984) .........................................................9

*Waldbaum v. Fairchild Publ'ns, Inc.*,
    627 F.2d 1287 (D.C. Cir. 1980)..................................................17

*Ward v. News Grp. Int'l, Ltd.*,
    733 F. Supp. 83 (C.D. Cal. 1990)...............................................11

*Young v. CBS Broad., Inc.*,
    212 Cal. App. 4th 551 (2012) ....................................................21

## STATUTES

Cal. Civ. Proc. Code § 425.16 ................................................................4

Cal. Civ. Proc. Code § 425.16(g).......................................................5, 22

## OTHER AUTHORITIES

Am. Jur. 2d Libel and Slander (2013) ....................................................8

## PRELIMINARY STATEMENT

This is an appeal from the denial of an anti-SLAPP motion to strike a complaint. To defeat the motion, plaintiff Danni Ashe ("Ashe" or "plaintiff") was required to present the district court with admissible evidence establishing a probability that she could prevail on the merits of her claims for defamation and false light. Rather than demonstrating how she had done so, plaintiff's Answering Brief denies the scope of her burden under the anti-SLAPP statute, disavows admissions establishing her status as a public figure libel plaintiff, and throws a lot of mud—making *ad hominem* attacks on defendant Associated Newspapers Ltd. ("ANL") in an effort to distract from the lack of legal merit to her position. Nowhere does plaintiff demonstrate how she has met her burden to defeat ANL's motion to strike her Complaint, because she cannot.

Ashe all but ignores ANL's demonstration that the defamatory statement at issue in this dispute—that an unknown porn star tested positive for HIV—is not reasonably understood to be "of and concerning" her. Ashe argues that use of her photo automatically means that the Article is necessarily "of and concerning" her, without ever addressing the obligation of a court to read an article as a whole. She simply has no answer to the fact that a reasonable reader would know from the text that appears before her stock photo that the HIV-positive performer referenced in the headline was "unidentified" and "new to the industry" and would readily

1

recognize the photo as illustrative of the industry—just like other stock photos used throughout the Article.

Plaintiff is equally misdirected in attempting to avoid this Court's clear precedent in *Newton v. NBC*, 930 F.2d 662 (9th Cir. 1990), *Eastwood v. National Enquirer, Inc.*, 123 F.3d 1249 (9th Cir. 1997), and *Dodds v. ABC*, 145 F.3d 1053 (9th Cir. 1998), which requires public figures to demonstrate that a defendant intended to convey the defamatory implication alleged. In an effort to avoid public figure status, Ashe depicts herself as just a "nude model," contradicting the allegations in her Complaint and her own widely reported public statements. The argument is entirely unpersuasive, coming from a self-described "pioneer[]" of pornography and the star of dozens of pornographic films, whose image has been downloaded from the Internet more than a billion times. As one of the most widely known porn stars, Ashe is plainly a public figure.

As such, a failure to show a likelihood of establishing that ANL intended to convey the HIV-positive implication that Ashe alleges is fatal to her claim. Ashe offers suspicion and inference, but no evidence at all to support her allegation. The two ANL journalists responsible for the Article have provided sworn testimony establishing how the Article came about, and explicitly denying any intent to convey that plaintiff is the unknown HIV-positive actress.

With no contrary evidence to present, plaintiff instead maligns ANL and argues that it was at least "reckless" to use Ashe's photo to illustrate the Article. Ashe demonizes the *Mail Online* as the "monster" of the tabloid world (again without any record evidence to support the claim), ignoring that *Mail Online* is an award-wining website covering everything from politics to science to entertainment news. And even if it were the "worst of the tabloid press," ANL would still be entitled to the constitutional protections articulated in *Newton*, *Eastwood*, and *Dodds*. In fact, *Eastwood* itself involved a tabloid publication, the *National Enquirer*.

Moreover, Ashe's contention that ANL was careless to include her stock photo as an illustration cannot save her claim even if she had any actual evidence of carelessness. *Newton* stands unequivocally for the proposition that objective recklessness is not evidence of a subjective intent to convey a defamatory implication—an intent Ashe was required to show she is likely ultimately to establish in order to defeat ANL's motion to strike.

The Answering Brief simply provides no answer to the fact that Article is not reasonably read to convey the implication that Ashe is HIV-positive, and even if it did convey that implication, there is no evidence whatsoever that ANL intended to convey that implication. Ashe failed to demonstrate a likelihood she

can prevail on the merits of her claims, and thus failed to meet her burden to defeat ANL's motion to strike her Complaint.

## ARGUMENT

### I.
### PLAINTIFF CONCEDES THAT CALIFORNIA'S ANTI-SLAPP STATUTE APPLIES, BUT MISSTATES HER BURDEN

Plaintiff's Brief concedes that California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, applies to her claims, but views an anti-SLAPP motion as essentially equivalent to a Rule 12(b)(6) motion to dismiss. Plaintiff argues that the burden imposed on her to defeat ANL's anti-SLAPP motion "must be compatible with the early stage at which the motion is brought and heard" and her "limited opportunity to conduct discovery," so that she need demonstrate only "minimal merit" for her claims to survive. Answering Brief ("AB") 13. Plaintiff fundamentally misstates her anti-SLAPP burden in two respects.

*First*, although the second prong of the anti-SLAPP inquiry, which requires a "probability of prevailing," has been called the "minimal merit" test in cases cited by Ashe, those same cases make clear that a plaintiff seeking to defeat an anti-SLAPP motion must do more than make allegations sufficient to state a claim. A plaintiff must "demonstrate that 'the complaint is both legally sufficient and *supported by a sufficient prima facie showing of facts* to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" *Metabolife Int'l*

*Inc. v. Wornick* (*Metabolife*), 264 F.3d 832, 840 (9th Cir. 2001) (citation omitted;

emphasis added); *see also Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260,

291 (2006) (cited at AB 13) (same); *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal.

4th 728, 741 (2003) (cited at AB 13) (same); *Consumer Justice Ctr. v. Trimedica*

*Int'l, Inc.*, 107 Cal. App. 4th 595, 604 (2003) (cited at AB 13) (same).  Leaving no

doubt about the anti-SLAPP burden, plaintiff's authority further makes clear that a

libel plaintiff opposing a motion to strike

> cannot rely on the allegations of the complaint, but *must produce*
> *evidence that would be admissible at trial*.  Thus, declarations may
> not be based upon 'information and belief' and documents submitted
> without the proper foundation are not to be considered.

*HMS Capital, Inc. v. Lawyers Title Co.*, 118 Cal. App. 4th 204, 212 (2004)

(citations omitted) (cited at AB 13) (emphasis added).  As such, Ashe's burden

here "is akin to that of a party opposing a motion for summary judgment."

*Navellier v. Sletten*, 106 Cal. App. 4th 763, 768 (2003).  She was obligated to do

more than make the kinds of allegations that would defeat a motion to dismiss, but

rather was required to produce admissible evidence that, if credited, would be

sufficient to prevail.  She failed to meet this burden.

*Second*, plaintiff incorrectly argues that her burden to present evidence

should be minimized because she had only "limited opportunity" to conduct

discovery.  AB 13.  As this Court has made clear, the discovery limiting provision

of Cal. Civ. Proc. Code § 425.16(g) does *not* apply in federal court.  *Metabolife*

*Int'l, Inc.*, 264 F.3d at 846. Plaintiff had full right and opportunity to take any discovery she felt was needed to respond to the anti-SLAPP motion. She did not assert any need for discovery and elected not to take any. The failure to take discovery when it is available to a plaintiff, this Court has also made clear, is not grounds to deny an anti-SLAPP motion. *Flores v. Emerich & Fike*, 385 F. App'x 728, 731 (9th Cir. 2010) ("discovery is still a party-driven process, requiring the [plaintiffs] to at least seek discovery"); *see also Four Navy Seals v. AP*, 413 F. Supp. 2d 1136, 1149 (S.D. Cal. 2005) (distinguishing cases where plaintiffs had "not asserted that discovery of any facts within the sole knowledge of Defendants [wa]s essential").

Although plaintiff objects to the "determination of . . . liability at the inception of the case," AB 38, that is the very purpose of the anti-SLAPP statute, *see, e.g.*, *Metabolife Int'l, Inc.*, 264 F.3d at 839. Despite her protestations to the contrary, Ashe was required to produce admissible evidence establishing that she has a legally sufficient claim. She failed to do so.

## II.
## PLAINTIFF FAILED TO SHOW A PROBABILITY OF PREVAILING ON HER DEFAMATION CLAIM

Plaintiff failed in multiple respects to demonstrate a likelihood of prevailing on her defamation claim.

6

A.     **The Alleged Defamatory Statement**
       <u>**Is Not "Of and Concerning" Plaintiff**</u>

In its Opening Brief, ANL demonstrated that no reasonable reader would construe the Article as stating that the named actress shown in a stock photo was the "unidentified performer" who had tested positive for HIV—simply because her photo was used did not make the allegedly defamatory statement "of and concerning" Ashe.  Opening Brief ("OB") 26-32.  In response, plaintiff advances three arguments, but each is fatally flawed.

*First*, Ashe attempts to shift the focus away from the lack of connection between her and the alleged defamatory statement by arguing that the entire Article "is reasonably construed as being directly about Plaintiff" because a stock photo is used that contains her name.  AB 14.  But the undisputed presence of the photograph with Ashe's name is not the proper focus of the "of and concerning" inquiry.  Rather, the issue is whether the Article as a whole implies to a reasonable reader that Ashe is HIV-positive.  *See Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1042 (1986) (the First Amendment "requires that *the statement* on which the claim is based must *specifically refer to, or be 'of and concerning,' the plaintiff* in some way" (emphasis added) (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 288-92 (1964))); *see also* OB 27-28.

*Second*, Ashe argues that the alleged defamatory statement is necessarily "of and concerning" her because her photograph appears "in conjunction with [the]

7

defamatory statement." AB 15 (citing Am. Jur. 2d Libel and Slander § 131 (2013)). Plaintiff asserts that "[m]any cases involving implied defamation involve the use of photographs," AB 16, but overlooks that those same cases require more than just the juxtaposition of a photo and a defamatory statement to find implied defamation—they require a direct connection between the photo and the statement. For example, plaintiff cites the 1909 decision in *Peck v. Tribune Co.* for the proposition that "the mere insertion of the plaintiff's picture" created the defamatory implication alleged. *Peck* held no such thing. AB 16 (citing 214 U.S. 185, 189-90 (1909)). In that case, *The Chicago Sunday Tribune* printed an advertisement with "a portrait of the plaintiff" and "the words, 'Mrs. A. Schuman' under it." *Peck*, 214 U.S. at 188. It went on to "quote" plaintiff as saying that she recommended whiskey to her patients indicating that "the words were hers." *Id.* Based on the *text* connecting the photograph and the alleged defamatory statements, the Court found that "the insertion of the plaintiff's picture in the place *and with the concomitants that we have described* imported that she was the nurse and made the statements set forth." *Id.* at 188-89 (emphasis added). *Peck* does not hold that mere use of a photo is enough, and to the contrary underscores the need for a textual link between an allegedly defamatory statement and a pictured person.

Here, the "textual link" negates any implication that the HIV-positive actress is the person in the photo.[1]  OB 26-33; *see also Dong v. Bd. of Trs.*, 191 Cal. App. 3d 1572, 1587 (1987) (publication must be "construe[d] . . . as a whole" and "cannot be considered in separate segments").  The four paragraphs of text between the allegedly defamatory headline and the stock photograph of plaintiff unequivocally state that the HIV-positive actor has not been identified and is "new to the industry."  OB 28-29.  No reasonable reader would think that the clearly identified female pictured in the act of being filmed is the unidentified female,

---

[1]  Plaintiff miscites a number of cases, many of which do not even address the "of and concerning" inquiry.  AB 16-17.  Those that do, like *Peck*, find that the implication is "of and concerning" the plaintiff because there is a textual link between the allegedly defamatory implication and the photograph.  *See, e.g., Clark v. ABC*, 684 F.2d 1208, 1213-14 (6th Cir. 1982) (finding "clarifying" language insufficient to dispel implication); *Duncan v. WJLA-TV*, 10 Media L. Rep. (BNA) 1395, 1398 (D.D.C. 1984) (statement "of and concerning" the plaintiff, because the camera was "closely cropped" on plaintiff); *Triangle Publ'ns v. Chumley*, 317 S.E.2d 534, 535 (Ga. 1984) (arrangement made it appear that the defamatory statements were the words of the pictured plaintiff).  There is no such link here.  Several other cases cited by plaintiff, AB 17, do not even undertake an "of and concerning" inquiry.  *Peoples Bank & Trust Co. of Mountain Home v. Globe Int'l Publ'g, Inc.*, 978 F.2d 1065 (8th Cir. 1992); *Palmisano v. Modernismo Publ'ns, Ltd.*, 470 N.Y.S.2d 196 (App. Div. 1983); *Davis v. High Soc'y Magazine, Inc.*, 457 N.Y.S.2d 308 (App. Div. 1982).  *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 80 (W. Va. 1983), holding that a defamatory implication referred to the plaintiff even though it did "not appear . . . that the article . . . in any way [applied to] the plaintiff," directly conflicts with controlling California law.  *See Prince v. Out Publ'g, Inc.*, 2002 WL 7999, at *7 (Cal. Ct. App. Jan. 3, 2002).

especially in light of two additional photographs of other (unidentified) women in the Article.

Plaintiff attempts to sidestep the obvious import of this context by arguing that this Court should consider only the headline and the photograph, and ignore what the district court called the "fine print." AB 18. The lead paragraphs of a news report, however, cannot properly be dismissed as "fine print," OB 29, particularly where California law requires that a publication "must be considered in its entirety," *Baker v. L.A. Herald Exam'r*, 42 Cal. 3d 254, 261 (1986). Both the district court and Ashe are mistaken in ignoring altogether the actual text of the Article in determining what a reasonable reader would understand it to say.

It is no answer for plaintiff to contend "headlines in an article may be construed apart from accompanying text because the public frequently reads only the headline." AB 18-19 (citing *Las Vegas Sun, Inc. v. Franklin*, 329 P.2d 867 (Nev. 1958); *Schermerhorn v. Rosenberg*, 426 N.Y.S.2d 274, 283-84 (App. Div. 1980)).[2] This is the *opposite* of reading the Article as a whole, and plaintiff cites

---

[2] Ashe miscites these out-of-jurisdiction cases. In *Schermerhorn v. Rosenberg*, the New York court explained that a headline is not actionable when it "is a fair index of an accurate article." 426 N.Y.S.2d at 283. The headline here is a fair index of the article, which is about a female pornography actor testing positive for HIV. In *Las Vegas Sun, Inc. v. Franklin*, the headline was actionable only because the "defamation . . . contained in the headline was complete upon its face." 329 P.2d at 870. Here, plaintiff makes no such claim that an alleged defamation in the headline is complete on its face.

no case law supporting this approach where, as here, a headline and explanatory text appear on the same page. *See, e.g.*, OB 27; *Ward v. News Grp. Int'l, Ltd.*, 733 F. Supp. 83, 84 (C.D. Cal. 1990)).

The cases cited by plaintiff neither support her "headline-only" rule nor adopt so cynical an understanding of the reasonable reader. For example, plaintiff cites this Court's opinion in *Kaelin v. Globe Communications Corp.*, 162 F.3d 1036 (9th Cir. 1998), AB 19, but that case is readily distinguishable on its facts and the law. The headline in *Kaelin* both named plaintiff and was directly defamatory of him: "COPS THINK KATO DID IT." 162 F.3d at 1037. Unlike the allegedly defamatory juxtaposition here, the headline, standing alone, could be the basis of a defamation claim. *Id.* at 1040. Moreover, this Court found the headline actionable notwithstanding clarifying language in the article specifically because the clarifying language was seventeen pages away from the defamatory headline, and "the cover headline" did not even point the reader to the article. *Id.* at 1041.

Directly to the contrary, the Article here was presented as a single piece with the headline, text of the Article, and photographs presented together. ER 67-73.[3]

---

[3] Plaintiff cites a district court footnote suggesting that "the extent to which a defamatory meaning may have been exacerbated could have varied depending on the device or software through which the Article was viewed." AB 18 n.6 (citing ER 31 n.8). This *sua sponte* suggestion by Judge Wu was never alleged by plaintiff and is unsupported by any fact in the record.

And while the *Kaelin* headline alone was defamatory, Ashe finds a defamatory implication only by combining a headline with one of three photos, and ignoring the four paragraphs of text separating the headline and the photo. AB 17. This is not a reasonable reading, finds no support in *Kaelin*, and defies both common sense and California law.[4] *See Baker*, 42 Cal. 3d at 261 ("contextual analysis demands that the courts look at the nature and full content of the communication").

*Third*, Ashe seeks to distinguish *Prince v. Out Publishing Inc.*, cited by ANL, on the ground that the article at issue in that libel case "was about *parties* attended by many 'thousands' of people." AB 22 (citing No. B140475, 2002 WL 7999, at *7 (Cal. Ct. App. 2d Dist. Jan. 3, 2002)). This observation in no way distinguishes the legal viability of plaintiff's claim from the one rejected in *Prince*. *Prince* stands for the proposition that under California law there is no actionable defamatory implication for the juxtaposition of a plaintiff's picture with a defamatory statement, if the text of the article dispels the alleged implication. 2002 WL 7999, at *7. In *Prince*, the implication that the defamatory statement

---

[4] Plaintiff also cites to *McNair v. Hearst Corp.*, 494 F.2d 1309, 1310 (9th Cir. 1974) (Washington law), AB 19-20, but *McNair*, like *Kaelin*, included a defamatory statement separated from "about fifty more paragraphs . . . on three different pages of the newspaper." *Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325, 1341 (2009) (citing *McNair*, 494 F.2d at 1310); *see also Monterey Plaza Hotel v. Hotel Emps. & Rest. Emps.*, 69 Cal. App. 4th 1057, 1066 (1999). It has no relevance to this case where the exculpatory language is *between* the headline and the stock photo of plaintiff.

referred to a pictured plaintiff was dispelled by the article's reference to "thousands" of people attending the pictured party. *Id.*; *see also Balzaga*, 173 Cal. App. 4th at 1340 (alleged implication in broadcast dispelled by the totality of the circumstances). Here, the alleged defamatory implication is dispelled by the Article's statements that the HIV-positive actor "was not immediately identified," while plaintiff plainly *is* identified. OB 31-32.

In short, plaintiff failed to meet her burden to demonstrate how a reader of the Article as a whole could reasonably conclude that she was the unknown HIV-positive actress. Plaintiff failed to establish a probability of success, and the district court erred in failing to strike her Complaint.

**B.** **Plaintiff Is a Public Figure Who Cannot Show That Defendant Intended the Alleged Implication**

Even if plaintiff could demonstrate that the Article reasonably conveyed a defamatory implication "of an concerning" her, the Complaint still should have been stricken. Plaintiff is a public figure for purposes of this libel case, who failed to demonstrate a probability of establishing that ANL *intended* to convey the false implication as this Court's controlling precedent in *Newton*, *Eastwood*, and *Dodds* unequivocally required her to do. OB 33-46. Plaintiff tries to avoid these precedents by claiming she is a private figure and distinguishing *Newton* as a post-trial decision. Alternatively, she claims to have satisfied the *Newton* standard. Neither argument has merit.

13

### 1.    Plaintiff is a public figure.

Contrary to plaintiff's claim that only "well known entertainers and other 'mega' celebrities" are public figures, AB 26, the category of public figures is broader, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974) (a plaintiff "who, by reason of the notoriety of [her] achievements *or* the vigor and success with which [she] seek[s] the public's attention, [is] properly classed as [a] public figure[]" (emphasis added); *see also Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 155 (1967) (athletic director at University of Georgia was a public figure).[5] Indeed, California courts and this Court have stated that plaintiffs who are neither nationally known nor "mega" celebrities can still be public figures for purposes of libel litigation. *See, e.g.*, *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 689 n.4 (9th Cir. 1998) (noting in *dicta* that former baseball player Don Newcombe was an "all-purpose public figure based on his baseball fame"); *Leidholdt v. L.F.P. Inc.*, 860 F.2d 890, 892 (9th Cir. 1988) (describing Dorchen Leidholdt, a "founding member of the organization Women Against Pornography," as a "public figure"); *Carafano v. Metrosplash.com Inc.*, 207 F. Supp. 2d 1055, 10701-72 (C.D. Cal.

---

[5] Plaintiff incorrectly cites *Gertz* for the proposition that all-purpose public figures are "rare." AB 25. The Court held only that *involuntary* public figures are rare. *Gertz*, 418 U.S. at 342. Here, plaintiff *voluntarily* sought notoriety as a pornographic actress. OB 33-36.

2002) (Christianne Carafano, a sci-fi actress, was an all-purpose public figure),

*aff'd on other grounds*, 339 F.3d 1119 (9th Cir. 2003).

Under this standard, there is no question that plaintiff is a public figure for purposes of her challenge to an article about the pornographic film industry. Plaintiff is a world-famous pornographer who made millions of dollars selling naked pictures of herself to millions of people. OB 33-36. In the process, she tenaciously pursued media attention, lobbied Congress, and, had her picture downloaded a billion times. Ashe is a face of the pornography industry to a significant segment of the population.

Ashe spends a lion share of her brief pretending that she is known for her skill as an "internet entrepreneur" and not her pornography, and walking back the allegations in her Complaint and her public statements to the contrary. AB 25-29. Regretting that her Complaint admits she was an Internet porn sensation and the brains behind a "pioneering" porn site, ER 325, plaintiff depicts herself as merely a "nude model," AB 1. But describing plaintiff as merely a "nude model" is like calling Steve Jobs merely a computer programmer. In the Complaint and for years earlier, plaintiff has boasted that she revolutionized Internet pornography and is the most downloaded woman on the Internet. ER 317. Plaintiff admits she has been:

> featured on the front page and covers of such American media
> institutions as The Wall Street Journal, USA Today, The Industry
> Standard and eCompany Now, as well as in the pages of Time, U.S.

News and World Report, Yahoo! Internet Life, numerous other newspapers and magazines on television and radio.

ER 304-05; *see also* ER 317-19 (Ashe declaration describing her "popularity as a soft-core adult personality"). She does not dispute having appeared in at least thirty movies, including "Bombshells in Bondage," "On Location in Fantasy Island," and "Ben Dover Does the Boob Cruise." ER 37, 151. In short, plaintiff's acknowledged career and her self-description show that she is a well-known pornographic entertainer, and not merely a "nude model."[6]

Plaintiff, in fact, doggedly pursued fame, hoping to land in the Guinness Book of World Records as "the most downloaded woman." And once she achieved that fame, plaintiff bragged about it, announcing that "On average over 100,000 people download images of Danni every day," "Danni.com uses more bandwidth than all of Central America!," and "You could download a different image of Danni every day for over 30 years and never download the same image

---

[6] When Ashe filed her Answering Brief on November 10, 2014, the Clerk told her to re-submit it in a different font. Four days later, Ashe submitted a new brief that did more than simply change the font. For example, in her initial brief, Ashe conceded that "entertainers . . . are examples of individuals who achieve public figure status." Her revised brief limited this admission, to state instead that "*well known* entertainers" are public figures. AB 26 (emphasis added). Similarly, Ashe removed her November 10th acknowledgement that she had "public notoriety" and replaced that phrase with "expertise." AB 9. She made these changes outside the leave granted by the Clerk and without notice to the Court or defendant, demonstrating both a lack of candor and an awareness that she is a public figure as typically defined.

twice." ER 285.  In the process, she boasted that she had achieved fame exceeding

that of "mega" celebrities Martha Stewart, Brittney Spears, and Oprah Winfrey.

ER 184, 304-05.  In fact, per her own press release, plaintiff makes George

Clooney, Michael Jackson, or Johnny Carson look like lesser known repertory

theater performers.[7]  ER 184.

Given this, plaintiff's strained attempt to distinguish the cases relied on in

ANL's Opening Brief are disingenuous at best.  AB 27-29.  For example, plaintiff

argues that *Carafano* is distinguishable because "Carafano was a popular television

and film actress who enjoyed general fame and notoriety," AB 27 (citing 207 F.

Supp. 2d at 1070-71), implying that Ashe has not obtained such notoriety.  The

argument is specious.  Over one billion people have watched plaintiff strip or have

sex with other people, and plaintiff's website has received up to 25 million visits a

month.  ER 283, 304.  This is a far more pervasive notoriety than ever possessed

by Ms. Carafano, whose public appearances at a science fiction convention drew

---

[7]  Both the lower court and plaintiff point to what they see as inconsistency in
defendant's position that plaintiff is a public figure and the declarations from
defendant's employees affirming that they did not know who plaintiff was.  ER 21;
AB 6.  There is no inconsistency.  The public figure test is not a subjective test,
and does not require universal notoriety.  *Waldbaum v. Fairchild Publ'ns, Inc.*, 627
F.2d 1287, 1293 (D.C. Cir. 1980) (describing the public figure inquiry as an
"objective" one, and eschewing "introduc[ing] subjective elements"); *see also*
*Reader's Digest Ass'n v. Super. Ct.*, 37 Cal. 3d 244, 255 (1984) (noting that the
inquiry is a "totality of the circumstances" one).

just 5,000 people and whose website generated "200,000 to 300,000 'hits' by visitors each month." *Carafano*, 207 F. Supp. 2d at 1062.

Plaintiff is equally misdirected in seeking to distinguish *Douglass v. Hustler Magazine, Inc.* on the grounds that the public figure porn star in that case also "appeared in television commercials, television dramas and in movies." AB 28 n.9 (citing 769 F.2d 1128, 1141 (7th Cir. 1985)). Ashe has given front page interviews to the *Wall Street Journal*, appeared in television documentaries, and has given interviews to Howard Stern, NPR, and VH1, among others. ER 151-52, 260-61, 265-68, 275, 287-88. Clearly, Ashe has obtained at least the level of fame attained by Ms. Carafano and Ms. Douglass. She is a public figure.[8]

Plaintiff alternatively seeks to escape her public figure status by noting that her fame was achieved "seventeen years ago." AB 7, 29 (same). Even accepting this for the sake of argument, and discounting both that her website Danni.com remains active and that videos and photographs of Ashe remain widely available online, ER 37, the "general rule" in California is "once a [wo]man has become a public figure, or news, [s]he remains a matter of legitimate recall to the public mind to the end of [her] days." *Maheu v. CBS, Inc.*, 201 Cal. App. 3d 662, 675

---

[8] Plaintiff also cites a Second Circuit case, *Lerman v. Flynt Distributing Co., Inc.*, arguing that her "public exposure is similar" to the plaintiff there. 745 F.2d 123 (2d Cir. 1984). But the plaintiff's "renown" in that case comes nowhere near to that of the "most downloaded woman on the Internet." ER 317-18.

(1988) (citation and internal quotation marks omitted); *see also Partington v. Bugliosi*, 56 F.3d 1147, 1152 n.8 (9th Cir. 1995) ("every court of appeals that has specifically decided this question has concluded that the passage of time does not alter an individual's status as a limited purpose public figure."). Whether plaintiff became famous yesterday or seventeen years ago, she is a public figure for purposes of this libel lawsuit.[9]

2.    The *Newton/Dodds* test applies to Ashe's claim.

As fully established in ANL's Opening Brief, a public figure plaintiff must prove that a libel defendant actually "intended to convey the defamatory impression" alleged. *Newton*, 930 F.2d at 681; *see also Dodds*, 145 F.3d at 1063-

---

[9]  Plaintiff argues that she is not even a limited purpose public figure because she "has never taken a public position or sought or received media attention concerning . . . the use of condoms in adult films . . . [or] the . . . public management of HIV or Aids [sic]." AB 30. This is not true. In a *USA Today* question-and-answer called "Talk Today: Interact with people in the news; 'American Porn': Danni Ashe," Ashe explained that "one really interesting point about the [porn] industry's growth is that today in the age of AIDS, sex is more dangerous, and there's a lot of sexual energy that needs to be exercised in a safe way. Pornography is one way to do that." ER 256. Ashe has also taken positions on the adult film industry and its effect on society, for example, by testifying in Congress about keeping pornography away from kids and agreeing to be interviewed by PBS for a documentary about the controversy of the modern porn industry. ER 260-61, 290-300. Even if Ashe were not a general purpose public figure, she is undeniably a public figure for the purposes of controversies surrounding the porn industry. *See, e.g.*, *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1196 (9th Cir. 1989) (anti-pornography activist was a public figure for the purposes satirical pornographic articles and cartoons).

64; OB 38. Plaintiff here produced no evidence demonstrating that defendant intended the alleged implication, and defendant submitted two affidavits, stating under penalty of perjury that neither the reporter, James Nye, nor the photograph editor, Jack Forbes, intended to convey the implication that the unknown HIV-positive actress was Ashe. ER 65, 78. Plaintiff nonetheless seeks to avoid the mandate of *Newton* and *Dodds* by arguing they do not apply to her claim because ANL's Article is not an investigative news story, AB 38-39, and because she has not yet chosen to take discovery, AB 38-40. These arguments are completely beside the point.

*First*, plaintiff's contention that *Newton* and *Dodds* apply only to investigative journalism is incorrect. The *Newton* and *Dodds* requirement turns on *who* the plaintiff is, *i.e.*, a public figure, not on *what* kind of article is challenged. *See Newton*, 930 F.2d at 668. *Eastwood*, for example, applied the *Newton* intent requirement to a public figure suing a tabloid magazine over a piece of gossip. 123 F.3d at 1252 (fact that defendant is a tabloid "does not diminish the constitutional protection afforded the content"). Plaintiff's attempt to distinguish *Newton* and *Dodds* based on the defendants having "conducted a full and complete investigation of the matter prior to reporting the story" simply misses the point. AB 38.

*Second*, plaintiff erroneously argues that *Newton* and *Dodds* do not apply because "ANL seeks a dispositive determination of its liability at the inception of the case (rather than after a full and fair trial on the merits)" and she has not yet taken discovery. AB 38-39. This argument finds no support in the text of the decisions and ignores that the "determination of . . . liability at the inception of the case," AB 38, is *exactly* the purpose of the anti-SLAPP statute, *see, e.g.*, *Metabolife Int'l, Inc.*, 264 F.3d at 839 (noting that anti-SLAPP statute's purpose is the "early dismissal" of meritless claims). It also ignores prior approval of the pre-discovery dismissal of a libel complaint on an anti-SLAPP motion for failure to demonstrate the intent to convey a defamatory implication required by *Newton* and *Dodds*.[10] *See Thomas v. L.A. Times Commc'ns, LLC*, 189 F. Supp. 2d 1005, 1013 (C.D. Cal.) ("no reasonable juror could find that Defendants intended to convey [the defamatory] impression."), *aff'd*, 45 F. App'x 801 (9th Cir. 2002).

*Finally*, as this Court held in *Metabolife*, Ashe had ample opportunity to take discovery on defendant's anti-SLAPP motion if she had chosen to do so. 264 F.3d

---

[10] Legions of cases have also stricken complaints on anti-SLAPP motions based on the related question of whether a defendant acted with knowledge of falsity or a reckless disregard for the truth. *See, e.g.*, *Makaeff v. Trump Univ., LLC*, No. 10CV0940 GPC WVG, --- F. Supp. 2d ----, 2014 WL 2743244, at *11 (S.D. Cal. June 17, 2014); *Young v. CBS Broad., Inc.*, 212 Cal. App. 4th 551, 566 (2012); *Christian Research Inst. v. Alnor*, 148 Cal. App. 4th 71, 88 (2007) (cited at AB 31); *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1169 (2004).

at 846 (limits on discovery in § 425.16(g) do not apply in federal court). She may not use her own failure to pursue discovery as an excuse for the absence of proof she was required to present.

###### 3. Plaintiff established no likelihood of demonstrating by clear and convincing evidence that ANL intended to convey the false implication alleged.

Relying for authority almost entirely on the very decision under review, plaintiff argues that she presented sufficient evidence of an intent by ANL to convey the alleged defamatory implication that Ashe was HIV-positive. But no such evidence was presented and the record before the Court negates any basis for concluding that plaintiff could make such a showing at trial.

*First*, plaintiff and the district court are both mistaken in construing the affidavits of Nye and Forbes as evidence that ANL *intended* to imply that Ashe was HIV-positive. Those affidavits provide sworn testimony that the journalists did not think the woman in the stock photo was HIV-positive and did not intend to say that she was. A court cannot fairly infer evidence of fault from a denial of fault. *See, e.g.*, *Bose Corp. v. Consumers Union U.S., Inc.*, 466 U.S. 485, 512 (1984) ("discredited testimony is not considered a sufficient basis for drawing a contrary conclusion").

Plaintiff and the district court are also mistaken in concluding that ANL's failure to investigate Ashe's HIV-status is evidence of intent to convey the

implication that she is HIV-positive. In fact, it supports the opposite. Why would there be evidence of an investigation into an implication ANL did not intend to make? To accept plaintiff's contrary analysis places the cart entirely before the horse. It faults ANL for failing to conduct research to support an implication it did not seek to convey.

Similarly, the "critical" evidence plaintiff claims to establish that ANL misrepresented what it knew about her stock photograph says nothing about any intent to identify Ashe as the HIV-positive actress.[11] AB 34-35. Ashe argues that the caption she found for the photograph on the Corbis website is different from the caption for the photo in ANL's own database, AB 33, and infers from this discrepancy that defendant must have "purposefully avoided the truth . . . which is tantamount to knowledge of falsity," AB 34. The argument makes no sense. Even accepting the admissibility of plaintiff's evidence—and defendant made no such concession—the most this "evidence" could establish is that ANL knew Ashe's name when it chose to use her photo to illustrate the Article. But whether or not

---

[11] Erroneously citing state law for an issue of procedure, Ashe argues that ANL did not preserve its foundation argument as to the Corbis image. AB 34 n.10; *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). This is incorrect. ANL's filing of an objection to the declaration "adequately put the district court on notice of its objection, and thus, preserves the issue for appeal." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1003 (9th Cir. 2002); *see also* ER 34.

they knew her name says nothing about whether defendant intended to state that

*Ashe was HIV-positive.*[12]

The thrust of plaintiff's argument and the district court's decision seems to

be that ANL was "reckless" in publishing the stock photo in such proximity to the

allegedly defamatory statement, but this type of recklessness is not the serious

doubt about truth required for Ashe to establish a claim as a public figure.  AB 31-

37.  Indeed, the district court confirmed the error in its reasoning when it told

ANL's counsel during argument, "obviously, you don't believe in recklessness,"

ER 48, and "a picture speaks a thousand words," ER 47.  Liability based on the

kind of objective recklessness that troubled the district court is not the intentional

misconduct required by the First Amendment for a public figure to succeed on a

libel claim.  *Sullivan*, 376 U.S. at 269 ("libel can claim no talismanic immunity

from constitutional limitations.  It must be measured by standards that satisfy the

First Amendment."); *Newton*, 930 F.2d at 681 (holding that a negligence standard

in public figure cases "eviscerates the First Amendment protections established by

*New York Times*").

---

[12]  To the extent plaintiff offers the purported "change" as evidence of Nye and Forbes' lack of credibility, it still is not evidence of intent.  *Newton*, 930 F.2d at 680 ("The district court [] erred in relying on the proposition that the jury could have based a finding of actual malice on a determination that the journalists' testimony about their state of mind was not credible.").

Ashe was required to establish more than a likelihood of proving that ANL acted with *objective* recklessness—*i.e.*, some sense that ANL should have been more careful—in publishing the Article. ER 20, 47-48. "Recklessness" in the actual malice context "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *see also Eastwood*, 123 F.3d at 1251 (citing *St. Amant*, 390 U.S. at 733). Rather, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731; *see also Dodds*, 145 F.3d at 1064 ("'there is no actual malice where journalists unknowingly mislead the public'" (citation omitted)). For just this reason, this Court rejected in *Newton* the kind of recklessness the district court here considered sufficient:

> The court offered two arguments in support of its ruling. Even if NBC had unintentionally left the impression that organized crime had financed Newton's purchase of the Aladdin, the court concluded, it "should have been foreseen" by NBC and the failure to foresee it "shows a reckless disregard for the truth." The court also concluded that since NBC had "voluntarily edited and combined the audio with the visual portions of the broadcast in a way that created the defamatory impressions" and since those impressions were "clear and unescapable," the jury could reject as incredible the testimony of the NBC journalists that they had not intended to leave the false impression. Both of these rulings conflict with the principles of *New York Times* and *Bose*.
>
> The district court erred in its ruling that an interpretation of the broadcast that "should have been foreseen" by the [] journalists can give rise to liability. The district court's standard of what "should

have been foreseen" is an objective negligence test while the actual malice test of *New York Times* is deliberately subjective.

. . . Negligence, weighed against an objective standard like the one used by the district court, can never give rise to liability in a public figure defamation case.

930 F.2d at 680.

Plaintiff presented no evidence that could possibly establish that ANL subjectively intended to say that Ashe is HIV-positive, and the record affirmatively rejects this conclusion. Plaintiff has not satisfied her burden to demonstrate that ANL intended the alleged defamatory implication, and for this reason, too, this Court should reverse the district court and strike Ashe's defamation claim.

## III.
## PLAINTIFF UTTERLY FAILS TO REBUT DEFENDANT'S ARGUMENT REGARDING HER FALSE LIGHT CLAIM

Plaintiff offers no meaningful response to defendant's demonstration that her false light claim must be stricken as duplicative of her defamation claim. *Compare* OB at 47-49 *with* AB 40. Ashe simply argues in two sentences that her false light claim cannot be stricken because ANL has no evidence it is meritless or brought to chill speech. AB 40 (citing *M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623, 636-37 (2001)). The argument is meritless because the law is clear that a false light claim cannot properly be based solely on the very same facts that fail to state a claim for defamation. *Dworkin*, 867 F.2d at 1193 n.3 ("In order to survive as a separate cause of action, a false light claim must allege a nondefamatory

statement.").  Moreover, it is no longer good law that a defendant is required to demonstrate an intent to chill.  *City of Cotati v. Cashman*, 29 Cal. 4th 69, 74 (2002) ("the anti-SLAPP statute . . . incorporates no intent-to-chill pleading or proof requirement").  For all the reasons stated in defendant's Opening Brief and not addressed by plaintiff, Ashe's false light claim should be dismissed.

## CONCLUSION

For the foregoing reasons, ANL respectfully requests this Court to reverse the district court, grant defendant's special motion to strike, and remand with instructions to dismiss the Complaint and award defendant its costs and fees.

Dated:  November 24, 2014

Respectfully submitted,

*/s/ Katherine M. Bolger*
Katherine M. Bolger
LEVINE SULLIVAN KOCH & SCHULZ, LLP
321 West 44th Street, Suite 1000
New York, NY 10036
kbolger@lskslaw.com
Telephone: (212) 850-6100
Fax: (212) 850-6299

Louis P. Petrich
LEOPOLD PETRICH & SMITH
2049 Century Park E - Suite 3110
Los Angeles, CA 90067
lpetrich@lpsla.com
Telephone: (310) 277-3333
Fax: (310) 277-7444

*Attorneys for Defendant-Appellant,*
*Associated Newspapers Ltd.*

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
## AND TYPE STYLE REQUIREMENTS

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, and Ninth Circuit Rule 32-1, I hereby certify that:

1.     The foregoing Brief of Appellant Associated Newspapers Ltd. complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because, according to the word count of the word-processing system used to prepare the brief, the brief contains 6,992 words, excluding the table of contents, table of authorities, and certificates of counsel.

2.     The foregoing Brief of Appellant Associated Newspapers Ltd. complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Times New Roman font.

Dated this 24th day of November 2014.


_/s/ Katherine M. Bolger_
Katherine M. Bolger

*Attorney for Defendant-Appellant,*
*Associated Newspapers Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Stephen Moore
Senior Appellate Paralegal
COUNSEL PRESS LLC